FILED

2020 May-27  PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| BRADLEY LYDELL HOLCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  4:19-cv-00189-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Bradley Lydell Holcomb appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and disability insurance benefits.  (Doc. 1).  Plaintiff timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review.  For the reasons stated below, the Commissioner's decision is due to be affirmed.

## I.      FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Plaintiff was thirty-four at the time of his disability onset.  (R. 231).  Plaintiff speaks English and has a high school education.  (R. 236).  Prior to his alleged disability onset, Plaintiff worked as an autobody repairer and mobile home

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. 9).

assembler.  (R. 59-60, 259).  Plaintiff filed the instant application on December 7, 2015, alleging disability as of February 1, 2015, due to diabetic neuropathy, arthritis, fibromyalgia, hypothyroidism, anxiety, and depression.  (R. 235).  Plaintiff testified he could no longer work, primarily due to pain in his back, legs, and feet.  (R. 51).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in SGA, he or she is not disabled, and the evaluation stops.  *Id*.  If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet durational requirements before a claimant will be found disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairments fall

within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found Plaintiff had not engaged in SGA since his application date. (R. 24). At step two, the ALJ found Plaintiff suffered from the following severe impairments: (1) osteoarthritis; (2) depression; (3) anxiety; and (4) degenerative disc disease. (*Id.*). Additionally, the ALJ found the Plaintiff did not have the medically determinable impairment of fibromyalgia because the medical record did not include

3

any diagnostic evidence to support the diagnosis; likewise, there was no evidence Plaintiff was undergoing treatment for fibromyalgia.  (R. 25).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments.  (R. 25-27).  Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following restrictions: (1) only performing unskilled work not requiring complex instructions or procedures; (2) no climbing of ropes, ladders, or scaffolds; (3) no working at unprotected heights or with hazardous machinery; (4) no driving; and (5); only occasional contact with the general public, although frequent interactions with co-workers and supervisors could be tolerated.  (R. 27).

At step four, the ALJ determined Plaintiff could not perform his past relevant work but could perform other jobs, including remnant sorter, mail clerk,  and order caller.  (R. 30-32).  Accordingly, the ALJ concluded Plaintiff was not disabled in an April 27, 2018 decision.  (R. 32).  Plaintiff sought review from the Appeals Council ("AC"), submitting additional medical evidence from treatment he received both before and after the ALJ's decision.  (*See* R. 1-3).  The AC denied review on November 27, 2018.  (R. 1).  With regard to the newly-submitted evidence, the AC concluded: (1) the evidence predating the ALJ's decision did not show a reasonable probability that it would change the outcome of the decision; and (2) the evidence

postdating the ALJ's decision did not relate to the timeframe at issue and thus did not affect the disability determination.  (R. 2).  The instant appeal followed.  (Doc. 1).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177,

1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  DISCUSSION

On appeal, Plaintiff contends: (1) the ALJ erred in rejecting the opinion of June Nichols, Psy.D.; and (2) the AC erred in refusing to consider the evidence generated during treatment he received after the ALJ's decision. (Doc. 10).[2] (*See* Doc. 11 at 4-5).  These arguments are addressed in turn.

---

[2] While Plaintiff also delineates a third argument that the denial of benefits was not supported by substantial evidence, that argument is duplicative of the second issue presented and rests entirely on the AC's treatment of the new evidence he presented with his request for review.   (Doc. 10 at 40-43).  Additionally, the only analysis Plaintiff offers in this section of the brief appears to apply to someone other than Plaintiff.  (Doc. 10 at 41; Doc. 12 at 10-11) (referring to a claimant named "Howard" who alleged a disability onset in 2011 and was challenging an unfavorable decision issued in 2013).

A.     __Dr. Nichols' Opinion__

The opinion of a one-time consultative examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).  However, an ALJ who rejects an examining physician's opinion must "state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir. 1983); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

Dr. Nichols performed a consultative examination ("CE") on March 9, 2016. (R. 375-78).   Plaintiff  reported  his  medications  were  beneficial  and  that  he experienced panic attacks.  (*See* R. 375, 377).  Dr. Nichols found Plaintiff exhibited: (1) depressed mood; (2) tearful affect; (3) fair and intact memory; (4) thought processes within normal limits; (5) good judgment and insight; and (6) average intelligence.  (R. 376-77).   Dr. Nichols assessed Plaintiff as suffering from panic disorder and "Major Depressive Disorder, recurrent and severe, without psychotic features."  (R. 377).   Dr. Nichols opined Plaintiff's prognosis for significant improvement was "guarded" because his mood disorder was caused in large part by his physical impairments.  (*Id.*).  Finally, Dr. Nichols noted Plaintiff's "panic attacks would markedly interfere with concentration, persistence and pace."  (R. 378).

The ALJ afforded little weight to Dr. Nichols' opinion, noting:

> She opined that the claimant did not demonstrate any deficits, which
> would interfere with his ability to remember, understand and carry out

> work related instructions.  Dr. Nichols opined that panic attacks would markedly interfere with the claimant's concentration, persistence, and pace.  Little weight is given to Dr. Nichols' marked finding as the record indicates greater functioning and the finding appears based largely upon the claimant's subjective reports.

(R. 30).  As to Plaintiff's functional abilities, the ALJ noted Plaintiff's testimony regarding his abilities and a function report he completed on January 10, 2016.  (R. 28).  The ALJ also noted the record did not reveal "on-going or aggressive mental health treatment."  (R. 30).  Both descriptions are accurate, as explained below.

Regarding the Plaintiff's testimony and statements concerning his functional abilities, Plaintiff testified he: (1) was the primary caregiver for his two children, with whom he lived alone; (2) attended his children's school activities, including football and basketball games; and (3) could drive and perform chores.  (R. 55-56).  In the January 2016 activity report, Plaintiff stated he could prepare food, perform household chores, drive, shop, handle money, and follow both written and verbal instructions.  (R. 253-56).  On the same report, Plaintiff listed his typical daily activities as including going out to eat breakfast, feeding and walking his dogs, and a variety of tasks associated with parenting his two children: (1) getting them ready for school; (2) picking them up from the bus stop; (3) helping with their homework; (4) feeding them; and (5) getting them ready for bed.  (R. 251).

Regarding Plaintiff's psychiatric treatment, the ALJ correctly noted the record reveals he underwent conservative medication treatment.  (*See* R. 30, 375).  It is true

that Plaintiff consistently reported anxiety and/or depression.  (*See, e.g.,* R. 321, 333-34, 339, 358, 363, 365, 370, 372, 388, 391, 394-99, 412, 427, 429, 434, 441, 448, 450, 455, 457, 462, 470, 474, 493).  However, no doctor ever mentioned complaints regarding concentration.  Indeed, where Plaintiff's treating physicians assessed his concentration, it was found to be "appropriate," or Plaintiff denied problems concentrating.  (R. 384, 412, 427, 435, 442, 448-49, 456, 462).  Moreover, Plaintiff's only psychiatric treatment consisted of taking prescribed medications, which he told Dr. Nichols were "beneficial."  (R. 375).

Here, the ALJ properly gave little weight to Dr. Nichols' opinion because it was contradicted by Plaintiff's admitted activities and abilities, his conservative and at least partially effective medication treatment, and Dr. Nichols' own objective observations.  *See Russell v. Astrue*, 331 F. App'x 678, 681-82 (11th Cir. 2009); *Poellnitz v. Astrue¸* 349 F. App'x 500, 503 (11th Cir. 2009); *see also Williams v. Barnhart*, 140 F. App'x 932, 934 (11th Cir. 2005).  Similarly, the ALJ properly noted Dr. Nichols' opinion was contradicted by the opinion of the state agency physician, who opined Plaintiff could concentrate for extended periods and tolerate workplace pressures despite his psychological impairments.  (R. 30).  *See Wainwright v. Comm'r of Soc. Sec.*, No. 06-15638, 2007 WL 708971, *2 (11th Cir. 2007).  For the foregoing reasons, substantial evidence supports the ALJ's decision to afford little weight to Dr. Nichols' opinion.

### B.      Treatment Records Generated After ALJ Decision

As the Eleventh Circuit has noted, a "'claimant is allowed to present new evidence at each stage of th[e] administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admins, Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261(11th Cir. 2007)).   The AC "must consider new, material, and chronologically relevant evidence" a claimant submits. *Washington*, 806 F.3d at 1320 (quoting *Ingram,* 496 F.3d at 1261).   "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is [] subject to judicial review . . . ." *Keeton v. Dep't of Health & Human Servs.,* 21 F.3d 1064, 1066 (11th Cir. 1994). Courts faced with this inquiry apply *de novo* review. *Washington*, 806 F.3d at 1321. Where the AC erroneously refuses to consider evidence, remand is appropriate. *Id.*

At issue here is a May 24, 2018 treatment note from Cherokee Health Clinic and an associated form showing Plaintiff's capacity to perform certain physical tasks; both records were signed by Elizabeth Gilbreath, CRNP.  (R. 15-18).[3]  The treatment note lists the following impairments as "inactive:" (1) lower limb neuropathy; (2) chronic pain syndrome; (3) hypertension; (4) hyperthyroidism; and

---

[3] The treatment note states the purpose of the visit was "to discuss disability" and lists Plaintiff's chief complaints as: (1) occasioned by the ALJ's unfavorable decision the previous month; and (2) counsel's opinion that "he has not had enough care nor documentation to get approved."  (R. 15).

(5) diabetes.  (R. 16).  CRNP Gilbreath did not comment on the status of Plaintiff's other impairments.  (R. 16-17).

On the physical capacities form, CRNP Gilbreath circled answers indicating her opinion that Plaintiff: (1) could sit for thirty minutes to an hour at a time; (2) could stand for thirty minutes at a time; (3) would have to be lying down, sleeping, or sitting with his legs elevated for two hours out of an eight-hour day; (4) would be off-task half the time; and (5) would miss fifteen days of work during a thirty day period.  (R. 18).  CRNP Gilbreath also checked boxes stating: (1) these limitations dated back to February 1, 2015; and (2) she expected Plaintiff's condition to last for a year or longer.  (*Id.*).  CRNP Gilbreath stated Plaintiff's limitations were caused by "neuropathy, multiple joint [and] back pain."  (*Id.*).

The May 24, 2018 treatment note and opinion are new because they do not appear elsewhere in the record; the records are material because, if CRNP Gilbreath's opinion regarding Plaintiff's physical abilities were accepted, there is a reasonable possibility it would change the administrative result.  *Washington*, 806 F.3d at 1321.  Accordingly, the only remaining question is whether the records are chronologically relevant.  Treatment notes from medical visits after an ALJ's decision can be chronologically relevant if they shed light on a claimant's condition at the time of the unfavorable decision.  *Id.* at 1322-23; *see* 20 C.F.R. § 416.970(b).

The AC determined the May 24, 2018 records were chronologically irrelevant.  (R.

2); *see Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018).

Plaintiff quotes extensively from the Eleventh Circuit's decision in

*Washington* and cases citing it.  (Doc. 10 at 33-39).  However, the holding in

*Washington*, 806 F.3d at 1322-23, was limited to "the specific circumstances"

presented in that case, where:

> (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision.

*Hargress*, 883 F.3d at 1309.  Moreover, as the Commissioner notes, the Eleventh

Circuit had declined to extend *Washington* to cases presenting different

circumstances.  *Id*. at 1309-10 (finding new evidence was not chronologically

relevant where there was no indication doctor considered the plaintiff's past medical

records or that his condition related to the relevant period); *Griffin v. Comm'r of Soc.*

*Sec.*, 723 F. App'x 855, 858 (11th Cir. 2018) (new MRI did not relate to relevant

period because there was no indication it was based on the plaintiff's condition at

the time of the ALJ's decision); *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855,

864 (11th Cir. 2017) (finding *Washington* did not apply because the new evidence—

a doctor's opinion—did not indicate it was based on medical records predating

ALJ's decision); *Green v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 516, 520 (11th

Cir. 2017) (finding AC correctly found new evidence was not chronologically relevant because doctor's opinion did not state it was based on a review of plaintiff's past medical records).

Here, the court agrees with the AC that the May 24, 2018 records are not chronologically relevant. CRNP Gilbreath's treatment notes do not reveal anything about the status of Plaintiff's impairments, and her opinion does not state it was based on a review of his past medical records. (R. 15-18). Under the foregoing authority, the AC did not err in finding these records were not chronologically relevant. While CRNP Gilbreath did check a box indicating Plaintiff's condition dated back to February 1, 2015, the Eleventh Circuit has held that this is insufficient to show chronological relevance. *See Hargress*, 883 F.3d at 1309-10 (affirming Commissioner's unfavorable decision and finding new evidence submitted to AC was not chronologically relevant, despite the fact that the doctor "checked a box that indicated that [plaintiff's] limitations dated back to" a time prior to the ALJ's decision.)

## IV.   CONCLUSION

Upon review of the administrative record and considering all of Plaintiff's arguments, the undersigned finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 27th day of May, 2020.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE